

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

**Signed July 25, 2005**                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LJM2 CO-INVESTMENT, L.P., | § | CASE NO. 02-38335-SAF-11 |
| D E B T O R (S). | § | |
| | § | |
| LJM2 CO-INVESTMENT, L.P., | § | |
| PLAINTIFF(S), | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-3104 |
| | § | |
| WILLIAM DAVID DODSON, et al., | § | |
| DEFENDANT(S). | § | |

### MEMORANDUM OPINION AND ORDER

LJM2 Co-Investment, L.P., by its successor, the LJM2
Creditors Liquidation Trust, has filed an avoidance action
against William Dodson, Michael Jay Kopper, Big Doe, LLC,
Citibank N.A., Andrew S. Fastow and Lea W. Fastow.  LJM2 alleges
that it holds a $30,000,000 judgment against LJM2 Capital
Management, L.P., its former general partner.  LJM2 seeks to
recover, under the Uniform Fraudulent Transfer Act as adopted by

Texas or, alternatively, as adopted by Delaware, approximately
$13,000,000 of transfers by Capital Management to the defendants.
The court entered a judgment against Big Doe, LLC, on June 28,
2005.  LJM2 agreed to extend Citibank's answer time to July 21,
2005.

   Kopper, Andrew Fastow and Lea Fastow move to stay the
proceeding as to them.  Dodson, Andrew Fastow and Lea Fastow also
move to dismiss this adversary proceeding.  LJM2 opposes all
those motions.  The court held a hearing on the motions on June
22, 2005.

**Motions to Dismiss**

   Andrew Fastow moves to dismiss this adversary proceeding
under the so-called first-to-file rule or, alternatively, to
abstain.  Lea Fastow moves to dismiss for improper service and
joins in Andrew Fastow's alternative motion to abstain.

   On September 23, 2004, LJM2 filed a complaint in this court
against Andrew Fastow and Kopper.  Adversary proceeding no. 04-
3565.  Premised on allegations of misconduct and mismanagement
regarding LJM2, LJM2 asserted claims for breach of fiduciary
duty, fraud, conspiracy, defalcation, conversion and unjust
enrichment.  The allegations involved, in part, distributions and
payments from LJM2.  The complaint requested the entry of a money
judgment against both Andrew Fastow and Kopper.

   On November 18, 2004, Kopper filed a notice of potential

-2-

tag-along action with the Judicial Panel on Multidistrict Litigation concerning adversary proceeding no. 04-3565.  On December 23, 2004, the MDL panel issued a conditional transfer order, which conditionally transferred the adversary proceeding to the Southern District of Texas as related to the In re Enron Corp. Securities, Derivative and ERISA Litigation, docket no. 1446 ("Enron MDL").  LJM2 objected to the transfer.

While the objection was pending before the MDL panel, LJM2 obtained its judgment in Delaware against Capital Management.  On March 31, 2005, LJM2 filed the instant adversary proceeding.  In this fraudulent transfer adversary proceeding, LJM2 seeks to recover transfers made from Capital Management to Andrew Fastow and to the other defendants.  LJM2 alleges that Andrew Fastow and/or Kopper controlled Capital Management.  LJM2 contends that this fraudulent transfer adversary proceeding concerning transfers made by Capital Management is not related to adversary proceeding no. 04-3565 concerning misconduct and mismanagement of LJM2 itself.  After the filing of this adversary proceeding, by order entered on April 19, 2005, the MDL panel transferred adversary proceeding no. 04-3565 to the Enron MDL for pretrial proceedings.

LJM2 filed the instant adversary proceeding while adversary proceeding no. 04-3565 was still pending in this court.  Nevertheless, the prior adversary proceeding has been transferred to the Enron MDL court in the Southern District of Texas.  As a

result, Andrew Fastow moves to dismiss this adversary proceeding
under the first-to-file rule.  Under that rule, when related
cases are pending before two federal courts, the court in which
the case was last filed may refuse to hear it if the issues
raised by the cases substantially overlap.  Once the likelihood
of a substantial overlap between the two suits has been
demonstrated, it is no longer up to the second filed court to
resolve the question of whether both should be allowed to
proceed.  If this court finds that the issues might substantially
overlap, this court should transfer the case to the Southern
District of Texas to determine which case should, in the
interests of sound judicial administration and judicial economy,
proceed.  That court would determine whether the instant
adversary proceeding should be dismissed, stayed or consolidated.
Cadle v. Whataburger of Alice, Inc., 174 F.3d 599, 603, 606 (5th
Cir. 1999).

Andrew Fastow has established, based on the allegations of
the two complaints, that the recovery of funds as fraudulent
transfers by Capital Management in the second law suit is a
subset of the money judgment sought in the first law suit.
Accordingly, this court concludes that the issues substantially
overlap.  LJM2 does not explain why it did not amend the first
law suit while it was pending in this court to add the parties
and the fraudulent transfer claims.  That would appear to be the
proper procedure.

-4-

If this court concluded that the first-to-file rule should
be applied, LJM2 asks that the court transfer the adversary
proceeding to the Enron MDL court rather than dismiss the
proceeding.  Andrew Fastow does not oppose that alternative
request.  This court, therefore, will transfer this adversary
proceeding to the Enron MDL court in the Southern District of
Texas for consideration with adversary proceeding no. 04-3565.
To the extent necessary to accomplish that transfer, the court
recommends that the United States District Court for the Northern
District of Texas withdraw the reference of this adversary
proceeding and enter the transfer order.

Both Andrew Fastow and Lea Fastow move the court, in the
alternative, to abstain from hearing the instant adversary
proceeding.  Since the court will transfer the adversary
proceeding to the Enron MDL court for consideration with
adversary proceeding no. 04-3565, the alternative motions will be
denied as moot.

Nevertheless, the court makes several observations, should
the Enron MDL court determine to return the adversary proceeding
for trial.  The Fastows ask the court to exercise its
discretionary authority to abstain.  28 U.S.C. § 1334(c)(1).  In
exercising its discretion, the court considers several factors,
recently articulated by this court in In re Denton County Elec.
Co-op, Inc., 281 B.R. 876, 881 (Bankr. N.D. Tex. 2002).

The bankruptcy estate has been administered with the assets

of LJM2 transferred to trusts established by the confirmed plan of reorganization.  This court appointed the trustee of the plaintiff trust to be the representative of the LJM2 estate. This court retained its jurisdiction to hear matters related to the LJM2 case, including liquidation of LJM2 assets transferred to the trust.  The LJM2 trust does not seek to recover fraudulent transfers by LJM2, consequently, this adversary proceeding does not raise a core matter.  Nevertheless, the adversary proceeding is related to the LJM2 case, since it involves LJM2 assets being liquidated for distribution to LJM2 creditors under a confirmed plan.  This court is therefore a court of competent jurisdiction.

The adversary proceeding involves state fraudulent conveyance laws.  This court typically and often applies those laws.  See 11 U.S.C. §§ 544(b) and 550.  LJM2 did not commence a prior suit to recover a fraudulent transfer in state court.  No state court suit is pending.

The Fastows assert they have a right to a jury trial.  If so, the jury trial would either be conducted by the United States District Court or, upon consent of the Fastows and LJM2, by the bankruptcy court.  Either way, to the extent they have a right to a jury trial, the right is protected without the need to abstain.

This court actively and aggressively manages its adversary proceeding docket.  The matter would be efficiently tried by this court without a burden on its docket.

Lea Fastow also moves the court to dismiss for lack of

-6-

proper service.  Lea Fastow contends that she should have been
served in prison, which she contends was her "dwelling house or
usual place of abode" at the time of service.  LJM2 disagrees
with that proposition, but nevertheless re-served her in prison.
The motion will therefore be denied as moot.

     Dodson moves the court to dismiss the complaint pursuant to
Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule
7012.  Dodson contends that the complaint fails to state a claim
for relief, and that the complaint is barred by judicial
estoppel, res judicata and lack of standing by the LJM2 trust.

      Dodson contends that the doctrine of judicial estoppel
should bar this complaint because LJM2 did not disclose its
fraudulent transfer claim against him.  Dodson overstates the
reach of the doctrine of judicial estoppel.

     "Judicial estoppel is 'a common law doctrine by which a
party who has assumed one position in his pleadings may be
estopped from assuming an inconsistent position[.]'"  In re
Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999) (quoting
Brandon v. InterFirst Corp., 858 F.2d 266, 268 (5th Cir. 1988)).
"The purpose of the doctrine is 'to protect the integrity of the
judicial process', by 'prevent[ing] parties from playing fast and
loose with the courts to suit the exigencies of self
interest[.]'"  Id. (quoting Brandon, 858 F.2d at 268).

     Judicial estoppel is applied when two requirements are met:
the position of the party to be estopped is clearly inconsistent

-7-

with its previous one, and the party convinced the court to
accept the previous position. See id. at 206.  In Coastal
Plains, the Fifth Circuit at least implicitly recognized the
additional requirement that the party to be estopped must have
acted intentionally rather than inadvertently.  See id. at 206
(noting that many courts impose such a requirement) and 210-13
(without expressly adopting the requirement, addressing on the
merits plaintiffs' contention that they had acted unintentionally
and inadvertently); In re West Delta Oil Co. v. Hof, 2002 WL
1963317, at *4 (E.D. La. Aug. 21, 2002) (holding that Coastal
Plains "did not blanketly adopt other circuits' requirement of
intent or bad faith in order for judicial estoppel to apply," but
applied elements of "inadvertence defense" "[w]ithout explicitly
adopting or rejecting the possibility of an 'inadvertence
defense' to judicial estoppel generally").  The Coastal Plains
court held that, "in considering judicial estoppel for bankruptcy
cases, the debtor's failure to satisfy its statutory disclosure
duty is 'inadvertent' only when, in general, the debtor either
lacks knowledge of the undisclosed claims or has no motive for
their concealment."  Coastal Plains, 179 F.3d at 210 (footnote
omitted).  See In re Wakefield, 312 B.R. 333, 336 (Bankr. N.D.
Tex. 2004).

     The LJM2 disclosure statement discusses the litigation with
Capital Management.  The disclosure statement informs
hypothetical investors that LJM2 was investigating claims it

-8-

could bring against other entities based on their relationship
with LJM2 during the Capital Management era.  The plan reserved
all claims, rights and causes of action against Capital
Management, including claims against third persons, further
including Capital Management, its employees including Kopper and
family members and domestic partners.  LJM2 contends that Dodson
is Kopper's domestic partner.  The reservation of rights of
action further includes payments or transfers made to or for the
benefit of those third persons.  The disclosure statement
provides that the plan would transfer those rights of action to a
Trust A for later adjudication, and that the plan would have no
preclusive effect and would not be subject to an estoppel
doctrine.

     The LJM2 plan incorporated those described provisions.  The
court confirmed the plan with those provisions.  The causes of
action were thereupon transferred to the trust.  The court's
confirmation order expressly provided that neither the order nor
the plan nor the disclosure statement would bar or preclude any
of the defined and transferred rights of action.

     The claim against Dodson had thereby been disclosed, even if
Dodson had not been expressly named.  This adversary proceeding
is not inconsistent with the disclosure statement nor the plan
confirmation process.  On this Rule 12(b)(6) motion, the court
has no basis to find that LJM2 had a motive to conceal the
avoidance claims against Dodson.  In Coastal Plains, the Fifth

Circuit observed that a debtor cannot "[c]onceal [its] claims; get rid of [its] creditors on the cheap, and start over with a bundle of [undisclosed, pre-bankruptcy] rights." Coastal Plains, 179 F.3d at 213.  That so-called windfall scenario has no application in this case.  The LJM2 plan trustee, pursuant to the plan, seeks a recovery to be distributed to the unpaid LJM2 creditors.  This constitutes the antithesis of the Coastal Plains concern.

Also, on this Rule 12(b)(6) motion, the court has no basis to find that LJM2 intentionally induced the court to accept a position inconsistent with the prosecution of these claims.  LJM2 requested that the court approve the disclosure statement.  By doing so, LJM2 requested that the court make the finding required by 11 U.S.C. § 1125 concerning the adequacy of the information in the disclosure statement.  The court had to determine whether the disclosure statement contained sufficient information "that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).  Initially, the court has no basis to find that a hypothetical investor typical of a claim holder in any class in the plan would consider whether or not to support the plan based on the prospect of an avoidance claim against Dodson.  But, in any event, the hypothetical investor had been informed of the Capital Management litigation with the reservation of rights of action against

-10-

Capital Management and its employees, including Kopper, and his
domestic partner.  The court cannot conclude that LJM2 is taking
a position at all inconsistent with its earlier request that the
court make the § 1125 finding nor that LJM2 induced the court to
accept an inconsistent position.  The doctrine of judicial
estoppel does not apply.

Dodson further argues that the alleged non-disclosure of the
avoidance claims against him bars this complaint under the
doctrine of res judicata.  For the doctrine of res judicata to
bar LJM2's claims:  (1) the parties must be identical in both
suits;  (2) the prior judgment must have been rendered by a court
of competent jurisdiction;  (3) there must have been a final
judgment on the merits in the prior case;  and (4) the same cause
of action must be involved in both cases.  Nilsen v. City of Moss
Point, 701 F.2d 556, 559 (5th Cir. 1983).  The parties are not
identical.  Dodson did not file a proof of claim in the LJM2
bankruptcy case.  Dodson was not a party to the LJM2 bankruptcy
case.  The doctrine of res judicata does not apply.

Dodson also asserts that LJM2 lacks standing to prosecute
the claim.  As discussed above, the claim had been preserved by
the bankruptcy estate and included in the assets transferred to
the LJM2 trust to prosecute on behalf of the LJM2 creditors.  11
U.S.C. § 1123(b)(3)(B).  The LJM2 trust has standing to prosecute
the adversary proceeding against Dodson.

Lastly, Dodson contends that the adversary complaint does

-11-

not state a claim for relief against him.  The court must
determine, in the light most favorable to the plaintiff, whether
the complaint states any valid claim for relief.  Cinel v.
Connick, 15 F.3d 1338, 1341 (5th Cir. 1994).  A complaint may not
be dismissed for failure to state a claim "unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  Conley
v. Gibson, 355 U.S. 41, 45-46 (1957).  The court must accept as
true all well-pleaded allegations contained in the plaintiff's
complaint.  Albright v. Oliver, 510 U.S. 266, 268 (1994).  The
facts pled must be specific, however, and not merely conclusory.
Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

        LJM2 alleges two fraudulent conveyance counts against
Dodson.  In count three of the complaint, LJM2 seeks to avoid
transfers from Capital Management to Kopper and from Capital
Management to Big Doe made for the benefit of Dodson or to Dodson
as subsequent transferee.  § 24.009(b)(1), (2), Tex. Bus. & Comm.
Code.

        LJM2 alleges that Capital Management was LJM2's general
partner from 1999 to January 4, 2002, and that Kopper controlled
Capital Management during that period.  LJM2 alleges that it has
claims against Capital Management and Kopper from that period.
§ 24.002(3) and (4), Tex. Bus. & Comm. Code.  Indeed, based on
those allegations, LJM2 alleges that it obtained a judgment
against Capital Management and that Kopper attempted to forfeit

his interest in certain Capital Management funds.

LJM2 further alleges that Capital Management transferred funds to Kopper in 2001 and 2002, while LJM2 was a creditor of Capital Management and while Capital Management was insolvent, and that Capital Management did not receive reasonably equivalent value in exchange for the transfers.  §§ 24.004, 24.006, Tex. Bus. & Comm. Code.  Alternatively, LJM2 alleges that Capital Management was engaged in or was about to engage in a business or transaction for which the remaining assets were unreasonably small or that it would incur debts beyond its ability to pay as they became due.  § 24.005, Tex. Bus. & Comm. Code.

LJM2 also alleges that Capital Management made the transfers to Kopper with the intent to hinder, delay or defraud its creditors, alleging badges of fraud to support an inference of intent.  § 24.005(b), Tex. Bus. & Comm. Code; Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC), 292 B.R. 255, 263 (Bankr. N.D. Tex. 2003).

Also, LJM2 alleges that Capital Management transferred funds to Big Doe in 2001 and 2002, while LJM2 was a creditor of Capital Management and while Capital Management was insolvent, and that Capital Management did not receive reasonably equivalent value in exchange for the transfers.  LJM2 alleges that Kopper owned and controlled Big Doe.

LJM2 alleges that Dodson was Kopper's domestic partner and living companion.  LJM2 alleges that the Capital Management

-13-

transfers to Kopper and Big Doe were for the benefit of Dodson or
that Dodson was the subsequent transferee.  § 24.009(b), Tex.
Bus. & Comm. Code.

These allegations address the elements of the Texas
Fraudulent Transfer Act.  Assuming that LJM2 proves each of these
allegations, the court cannot conclude that LJM2 has not stated a
set of facts upon which relief can be granted.

In count four, LJM2 alleges that it held a claim against
Kopper and that Kopper transferred real estate, a motor vehicle
and cash to Dodson while Kopper was insolvent and that Kopper did
not receive reasonably equivalent value in exchange for the
transfers.  §§ 24.002(3) and (4), 24.005(a)(2), 24.006, Tex. Bus.
& Comm. Code.  LJM2 alleges that Dodson was the first transferee
of these assets or, alternatively, that the transfers had been
made for Dodson's benefit or, alternatively, that Dodson was the
subsequent transferee.  § 24.009(b), Tex. Bus. & Comm. Code.
These allegations address the elements of the Texas Fraudulent
Transfer Act.  Assuming that LJM2 proves each of these
allegations, the court cannot conclude that LJM2 has not stated a
set of facts upon which relief can be granted.

Consequently, the court will deny Dodson's motion to
dismiss.

### Motions to Stay Proceeding

Kopper, Andrew Fastow and Lea Fastow all request that the

-14-

court stay the proceeding against them pending completion of
criminal proceedings against them.  They contend that the stay
would preserve their Fifth Amendment privilege against self-
incrimination.  The United States has moved to intervene in this
adversary proceeding.  The government seeks a temporary stay
relating to Andrew Fastow and Kopper to avoid disrupting and/or
prematurely disclosing information in criminal proceedings.  The
government's motion to intervene has not been set for hearing.
LJM2 responds that Kopper and Andrew Fastow have already entered
guilty pleas and Lea Fastow has already served her sentence,
thereby obviating the need to stay this proceeding to protect
Fifth Amendment privileges.

     Kopper and Andrew Fastow contend that if they respond to
discovery or further issues in this adversary proceeding, then
they will jeopardize their Fifth Amendment privilege against
self-incrimination by creating the possibility that their
responses will aid the prosecution against them.  See Wehling v.
Columbia Broadcasting System, 608 F.2d 1084 (5th Cir. 1979).
Although both have entered guilty pleas, neither have been
sentenced.  The United States District Court for the Southern
District of Texas has set sentencing for June 9, 2006, for Kopper
and June 13, 2006, for Fastow.  Both have obligations to
cooperate with the government's ongoing investigations concerning
Enron-related transactions.  Where a sentence has not yet been
imposed, a defendant may have a legitimate basis to invoke his

Fifth Amendment privilege.   See Mitchell v. United States, 526
U.S. 314, 326 (1999).

LJM2 asserts that this fraudulent transfer adversary
proceeding does not parallel the criminal proceedings.  Kopper
and Andrew Fastow have plead guilty to crimes dealing with
defrauding Enron shareholders, manipulation of Enron's financial
statements and certain other transactions occurring in and prior
to 2000.  This adversary proceeding involves transfers from April
2001 through July 2002.  But Kopper and Andrew Fastow respond
that they face wide-ranging indictments covering their
involvement with LJM2 entities, including Capital Management.
Kopper observes that discovery will cover his acts from 1999.
This proceeding may indeed impact their cooperation with the
government and their resulting sentences.  As the government
observes, the criminal indictments and investigations cover a
broad range of Enron-related transactions, with the grand jury
term extending to March 2006.  There is a sufficient likelihood
of an overlap of this investigation with LJM2 transfers to
Capital Management with subsequent transfers to the defendants to
warrant concern for the protection of the Fifth Amendment
privilege.

LJM2 argues that this court has previously declined to stay
preference and constructive fraudulent transfer avoidance actions
against a potential target of a criminal investigation in the
Enron case, despite the defendant's concern with the impact on

his Fifth Amendment privilege.  Official Employment-Related
Issues Committee v. McMahon (In re Enron Corp.), 316 B.R. 251,
253 (Bank. S.D. Tex. 2004).  In McMahon, the plaintiff agreed to
defer any claim involving the intent of the defendant regarding
the targeted transfers.  In this case, LJM2 has not similarly
agreed to defer any allegedly intentionally fraudulent transfer
claims.  Consequently, the court cannot perform with precision
the incision that protected McMahon's Fifth Amendment privilege
while allowing the avoidance litigation to partially proceed.

Although not yet set for hearing, the government requests
that the court stay discovery in this matter relating to Kopper
and Andrew Fastow until June 1, 2006, or, if necessary, pending
the conclusion of United States v. Richard A. Causey, et al., Cr.
No. H-04-25, in the Southern District of Texas.  The government
states that discovery at this time risks disrupting its criminal
prosecution and raises the possibility of disclosing information
from the ongoing grand jury investigation.  The Causey case is
set for trial on January 17, 2006.  The court recognizes the
breadth and magnitude of the Enron-related criminal
investigations and proceedings.  The court will protect the
integrity of that process provided LJM2 suffers no prejudice.

LJM2 responds that it would be prejudiced by a delay.
Several law suits seeking money judgments are pending against the
defendants.  LJM2 is concerned that the plaintiffs in the other
civil law suits will exhaust Kopper's and Andrew Fastow's

-17-

financial resources. The claims against Kopper and Andrew Fastow notwithstanding, LJM2 does not contend that it will be deprived of evidence or otherwise prevented from proceeding if the matter is temporarily stayed. Indeed, to the contrary, the government asserts that Kopper's and Andrew Fastow's cooperation agreement applies to this proceeding.

In the Enron securities litigation pending in the Southern District of Texas, the court has entered stays pending the criminal proceedings. However, by agreement, the court modified the stay for the limited purpose of document discovery upon the conclusion of the testimony in the Causey case or, if Kopper or Andrew Fastow do not testify in that matter, the close of the evidence. See Newby v. Enron Corp., civil action no. H-01-3624, order entered May 25, 2005. That is essentially the relief the government seeks in this proceeding.

The court balances these considerations to stay this civil proceeding against Kopper and Andrew Fastow until June 13, 2006, the latest anticipated sentencing date. That stay protects their Fifth Amendment privilege while recognizing the government's position, especially concerning the Causey trial. Yet, it targets a realistic schedule for this adversary proceeding. See Heller Healthcare Finance, Inc. v. Boyes, 2002 WL 1558337 (N.D. Tex. 2002). The stay would be effective after the entry of the order resolving the motions addressed in this memorandum opinion and after the transfer to the Southern District of Texas.

-18-

The Fifth Amendment privilege no longer applies to Lea
Fastow, however.  Lea Fastow has plead guilty and served her
sentence.  Nevertheless, she contends that she could face further
prosecution if Andrew Fastow fails to cooperate with the
government.  As the court is entering a temporary stay regarding
Andrew Fastow, this concern has effectively been addressed.  Lea
Fastow, however, may no longer invoke the Fifth Amendment
privilege.

Accordingly, the court will stay the proceeding regarding
Kopper and Andrew Fastow until June 13, 2006, but will decline to
stay the proceeding against Lea Fastow.  Since this adversary
proceeding is being transferred to the Southern District of Texas
for further consideration, this order is without prejudice to
further order of that court.

### Order

Based on the foregoing,

**IT IS ORDERED** that the motion of William Dodson to dismiss
is **DENIED**.

**IT IS FURTHER ORDERED** that this adversary proceeding is
transferred to the United States District Court for the Southern
District of Texas for consideration with adversary proceeding no.
04-3565, previously transferred to that court as the Enron MDL
court.  To the extent necessary to accomplish the transfer, the
court recommends that the United States District Court for the

-19-

Northern District of Texas withdraw the reference of this
adversary proceeding and enter the transfer order.

**IT IS FURTHER ORDERED** that the alternative motions of Andrew
S. Fastow and Lea Fastow to abstain are **DENIED.**

**IT IS FURTHER ORDERED** that the motion of Lea Fastow to
dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that the motions of Michael Kopper and
Andrew S. Fastow for a stay of this proceeding are **GRANTED IN
PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that, following the above-ordered
transfer, the proceeding is stayed as to Michael Kopper and
Andrew S. Fastow until June 13, 2006, subject to further order of
the United States District Court for the Southern District of
Texas.

**IT IS FURTHER ORDERED** that the motion of Lea Fastow for a
stay of this proceeding is **DENIED.**

###END OF ORDER###